**SAMUEL T. ISAAC & ASSOCIATES, INC.**

v.

**The UNITED STATES.**

No. 638–80C.

United States Claims Court.

Oct. 7, 1983.

Suzanne M. Caldwell, Washington, D.C., for plaintiff. Caldwell & Caldwell, Washington, D.C., of counsel.

Kenneth Oestreicher, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant. David M. Cohen, Director, Thomas W. Petersen and Phyllis Slesinger, Washington, D.C., of counsel.

## OPINION

PHILIP R. MILLER, Judge:

*On Defendant's Motion for Summary Judgment with Respect to Count I of the Complaint*

Plaintiff claims damages for a breach of contract by the Government National Mortgage Association (GNMA), a wholly-owned corporate instrumentality of the United States, for failing to honor a commitment to guarantee securities to be issued by plaintiff in the Mortgage-Backed Securities Program (MBSP) administered by GNMA.

The MBSP is a program for attracting private capital into the housing market. Savings and loan institutions, mortgage bankers and similar organizations issue securities which are backed by pools of federally-insured or guaranteed mortgages and use the mortgage proceeds to make payments of principal and interest to holders of the securities. Timely payment of such principal and interest is guaranteed by GNMA, and the full faith and credit of the United States is pledged to the payment of the guaranteed amounts.

The complaint alleges that on or about September 12, 1979 GNMA issued to plaintiff a commitment, effective October 1, 1979, and valid for one year thereafter, to guarantee plaintiff's mortgaged-backed securities in the face amount of approximately $1,100,000 for a specified pool of mortgages. The complaint further alleges that to obtain this commitment plaintiff complied with all GNMA eligibility require-

ments, including net worth requirements, in effect on the issue date of the securities, October 1, 1979, and paid to GNMA a $500 fee for the guaranty, and that, in reliance on that commitment, plaintiff originated and purchased $1,022,000 in mortgage loans to form the basis for the pool.

Thereafter, plaintiff states, pursuant to the aforesaid commitment, on or about October 12, 1979, it submitted to GNMA all necessary documentation for the securities. However, on October 16, 1979, plaintiff was informed by the HUD Mortgage Review Board that its HUD–FHA mortgage status was being withdrawn subject to appeal, and, as a result, on or about October 23, 1979, GNMA returned all of plaintiff's documentation and refused to honor its commitment to plaintiff.

The complaint acknowledges that "one of the eligibility requirements for an issue of Mortgage-Backed Securities is approval as a HUD–FHA mortgagee",[1] and also concedes the applicability to the contract of 24 C.F.R. § 390.3(g), which provides in part that—

> In the event that a mortgage lender which has qualified as an eligible issuer should subsequently fail to comply with any of the requirements prescribed in this section, the Association [GNMA] may withhold further commitments to guarantee securities * * *.

■ It is plaintiff's contention, however, that under the commitment plaintiff need only have met the GNMA eligibility requirements as of October 1, 1979, to be entitled to a guarantee, and that HUD–FHA's withdrawal of its approval of plaintiff as a mortgagee on October 16, 1979, came too late to allow GNMA to withdraw its commitment to plaintiff. Accordingly, it asserts, GNMA's refusal to guarantee plaintiff's securities was a breach of contract.

Plaintiff claims that as a direct and proximate result of such breach it was unable to use its loan portfolio to form the basis for sale of mortgage-backed securities but was

instead forced to sell it at an 8.65 percent loss; that it lost the potential income from the right to service the loans over their remaining lives and the possible repeat business of its homeowner-customers; and that it was damaged in its reputation, trade and profession.

In its motion for summary judgment defendant adds to plaintiff's statement the additional facts that FHA advised plaintiff and GNMA of its withdrawal of its approval of plaintiff as an FHA-approved mortgagee on October 16, and that GNMA advised plaintiff on October 17, 1979, that as a result of the FHA suspension it was no longer eligible to be a GNMA issuer. These statements are supported by documentary evidence, and the receipt of such notice is not refuted by plaintiff by affidavits or otherwise. Defendant's statement that FHA's action was taken because of a false certification to FHA by the plaintiff's president that his company had a firm commitment from GNMA for permanent financing of a particular project is also supported by documentary evidence, and neither the truth of such statement nor the validity of the FHA action is challenged in this action.

Plaintiff's claim is based on two propositions. First, in its complaint plaintiff asserts:

> That the date of issue for securities on Pool No. 36733 is specified as October 1, 1979 on HUD Form 1705 Schedule of Subscribers, HUD Form 1706 Schedule of Pooled Mortgages, HUD Form 1717 GNMA Securities Prospectus, and HUD Form 1716 Guaranty Agreement.

Defendant concedes that under GNMA practice the issue date of the securities is the first day of the month during which GNMA approves, executes and delivers its guarantee on the face of the Securities. But it is difficult to comprehend why a convention for relating back the date of issue of the guaranteed securities to the first of the month should give the applicant the right to freeze the facts upon which GNMA determines eligibility to those exist-

---

**1.** *See* 24 C.F.R. § 390.3(a) (1979), p. 8, *infra.*

ing as of the first of the month. No determination was made on the first of October, and until GNMA approved the guarantee and delivered the securities to plaintiff there was no guarantee and, for that matter, no issue date.

If the determination of an applicant's final eligibility for guarantee of its securities had to be based exclusively on the facts existing at the first of the month, it would mean that even if, in the interim between that date and the actual issuance date (which might be 3 weeks later), an applicant became insolvent, was convicted of a crime or committed fraud or embezzled funds, GNMA would nevertheless be obligated to guarantee his securities. Plaintiff has suggested no reason why GNMA would so provide or why plaintiff would construe the relation back practice to accomplish such an absurdity.

Second, in its brief in opposition to the motion for summary judgment plaintiff relies on clause 8 of GNMA's commitment. It states that "The issuer must meet all of GNMA's eligibility requirements, including net worth requirements, in effect on the issue date of the securities." Plaintiff would have the court read this to mean that "the issuer must meet all eligibility requirements on the issue date". This is unwarranted because it deletes the phrase "in effect on". In other words, the eligibility requirements which the issuer must meet are those in effect on the issue date. Nothing in the clause suggests that if the applicant meets the minimum net worth and other eligibility requirements on the first of the month it need not comply with them thereafter in order to obtain a guarantee of its securities.

Defendant's construction of the terms of the commitment is also reinforced by matters outside the commitment notice but which are incorporated therein by reference. Clause 7 of the commitment provides:

> The formation of the referenced GNMA Mortgage Pool, the issuance of mortgage-backed securities and the administration of the aforesaid GNMA Mortgage Pool until the last outstanding mortgage in the pool is repaid or otherwise cancelled, will be performed by the Issuer in compliance with the provisions of Section 306(g) of the National Housing Act and applicable Regulations and of the "Government National Mortgage Association Mortgage-Backed Securities Guide".

The applicable regulations to which Clause 7 refers includes the following (24 CFR § 390.3 (1978)):

> (a) A mortgage lender * * * shall be eligible to issue and service mortgage-backed securities guaranteed by the Association if such mortgage lender qualifies as an eligible issuer. In order to qualify as an eligible issuer, a mortgage lender must—
>
> (1) Be in good standing as a mortgagee approved by the Federal Housing Administration;
>
>    *     *     *     *     *     *
>
> (b) The Association shall not * * * guarantee (pursuant to a commitment or otherwise) any issue of mortgage-backed securities unless the mortgage lender requesting such commitment or guaranty *then* qualifies as an eligible issuer. [Emphasis supplied.]

The phrase "then qualifies as an eligible issuer" obviously refers to the date of the guarantee.

Plaintiff also argues that defendant's motion for summary judgment is barred by the rule of the law of the case because defendant previously was denied summary judgment. The law of the case principle expresses "the practice of Courts generally to refuse to reopen what has been decided." *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). *See also Northern Helex Co. v. United States,* 225 Ct.Cl. 194, 200, 634 F.2d 557, 561 (1980); *United States v. Turtle Mountain Band,* 222 Ct.Cl. 1, 7–8, 612 F.2d 517, 520–521 (1979); *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.1967); and *E.D.S. Federal Corp. v. United States,* 2 Cl.Ct. 735, 737–38 (1983). However, the law of the case rule is not applicable here because the

**528**

prior ruling decided no question of law or fact at issue on the current motion.

In its initial motion the Government took the position that the first possible issue date that Isaac could have obtained was November 1, 1979, and that Isaac was no longer eligible as an issuer in the Mortgage Backed Securities Program. This position was based on the language in Chapter 9 of the GNMA MBSP Guide that to obtain an issue date of the first of the month, an issuer must deliver to GNMA the required documentation by the 10th of the month. In opposition to that motion Isaac claimed that GNMA waived that time for delivery requirement, while defendant denied there had been such a waiver. This raised a factual issue. Consequently, the court stated that on the basis of the materials supplied by the parties it was of the view that the case involved disputed issues of material fact and could not be decided on the cross motions for summary judgment. Accordingly, its ruling was that "both motions are denied without prejudice." Defendant's current motion relies on a wholly different ground for judgment which does not involve any material issue of fact.

The pleadings, affidavits and undisputed documents show that there is no genuine issue as to any material fact and that as a matter of law defendant is entitled to judgment dismissing Count I of the complaint.

The remaining counts having previously been dismissed, IT IS ORDERED that the clerk enter judgment dismissing the complaint.

